GEORGE M. GRAY, by Guardian, *vs.* ANGIER M. GRAY.

Somerset. Opinion February 26, 1914.

*Breach of Condition of Mortgage. Conditions. Forfeiture of Right to Specified Support. Maintenance During Life. Mortgage. Mental Responsibility. Vicious Acts Towards Defendant.*

Real action of mortgagee for breach of condition. May 11, 1893, defendant gave mortgage to his mother and to plaintiff, his brother, conditioned to suitably support and maintain them during their lives in his house, or in such suitable house as he might provide, defendant to have benefit of plaintiff's wages. Defendant properly supported his mother until her death in 1900, and furnished a suitable home for plaintiff and treated him kindly, until 1911, when following an outburst of passion and vicious conduct towards defendant, he left the defendant's house, since which time he has refused to have him at his home.

*Held:*

1. That if the plaintiff understood what he was doing and was at the time mentally responsible, so that he appreciated what the effect and nature of the acts he had performed were, then he would forfeit all right to the support specified in the bond.

2. The real issue involved in the case is whether the plaintiff possessed sufficient intelligence and mental capacity to appreciate the nature and effect of his improper and vicious acts towards the defendant and to conduct himself in a reasonably proper manner.

On motion by plaintiff for a new trial. Motion overruled.

This is a real action by a mortgagee to recover possession of the land described in said mortgage for a breach of the condition of said mortgage. May 11, 1893, the defendant gave said mortgage to his mother and the plaintiff, who is his brother, to secure the conditions in his bond that he would suitably support and maintain them during their lives and provide them with clothes, food, drink, medicine and nursing and all other things necessary, in his house, or in such suitable house as he might provide; he to have the benefit of plaintiff's wages. The mother lived with and was properly supported by defendant until her death in 1900. The plaintiff lived with and was properly supported for eighteen years to 1911. Some-

time in 1911, the plaintiff left the defendant's house, since which time he has not had a home there and the defendant has refused to have him there, because of his unruly and dangerous conduct towards the defendant.

Plea, the general issue with brief statement of special matter of defense, in which it is alleged, in substance, that the title under which plaintiff claims the real estate is a mortgage deed conditioned that defendant should well and truly support Rachel Gray and George M. Gray during their natural lives. That said defendant on his part has fully carried out, fulfilled, done and performed all of the conditions mentioned in said bond. That the defendant has not had the benefit of said plaintiff's wages as set out and agreed in said obligation.

The jury returned a verdict for the defendant and the plaintiff filed a general motion for a new trial.

The case is stated in the opinion.

*Merrill & Merrill,* for plaintiff.

*Walton & Walton,* for defendant.

Sitting: Savage, C. J., Spear, King, Haley, Hanson, Philbrook, JJ.

King, J. Real action by a mortgagee counting on a breach of the condition of the mortgage.

May 11, 1893, the defendant gave the mortgage in question to his mother and the plaintiff (who is his brother) to secure the conditions of his bond that he would suitably support and maintain them during their lives and provide them with clothes, food, drink, medicine and nursing and all other things necessary, in his house or in such suitable house as he might provide, he to have the benefit of the plaintiff's wages. The plaintiff is the surviving obligee and mortgagee. The mother lived with and was properly supported by the defendant until her death in 1900. And it is undisputed that for a period of about eighteen years, down to 1911, the defendant performed the conditions of his bond respecting the plaintiff's support and maintenance, furnishing him at all times a suitable home at his house and treating him with kindness and consideration.

It appears, however, that about 1911 the plaintiff left the defendant's house, following an outburst of passion and vicious conduct on his part towards the defendant, since which time he has not had a home there and the defendant has refused to have him there because of his unruly and dangerous conduct. And concerning that conduct the learned counsel for the plaintiff in his brief says: "If the plaintiff understood what he was doing and is and was mentally responsible, so that he appreciated what the effect and nature of the acts he has performed were, then no doubt he would forfeit all right to the support specified in the bond until he mended his ways."

Therein is involved the real issue in the case, whether the plaintiff possessed sufficient intelligence and mental capacity to appreciate the nature and effect of his improper and vicious acts towards the defendant, and to conduct himself in a reasonably proper manner.

No suggestion is made that that question was not clearly presented to the jury, and it was one they were competent to understand and decide. They returned a verdict for the defendant, showing thereby that they found from the evidence that the plaintiff was possessed of sufficient intelligence to know that his conduct towards the defendant was wrong, and that he should be held responsible for it. Does the evidence justify that finding?

The plaintiff was 51 years old at the time of the trial. After he left the defendant's home another brother was appointed his guardian and brings this action in the plaintiff's behalf. It clearly appears that the plaintiff is considerably below the normal person in mental capacity, and that his intelligence is much limited. But he knew how to perform common labor, to contract for and collect his wages, to make purchases for his needs and comfort, to obtain credit and extensions of credit, to discharge his obligations when due, and to leave his surplus earnings with his favorite sister for safe keeping. He testified at the trial in his own behalf, and certainly the record of his testimony does not indicate that he was so deficient in mental capacity and intelligence that he could not understand the nature and effect of vicious an dthreatening conduct towards his brother, and appreciate that he ought not so to conduct himself. It is true that the printed words of testimony sometimes produce a better impression on the reader's mind of the witness'

intelligence and mental capacity than would have been produced if the reader had observed the witness when the testimony was given. But in this case the jury had the opportunity of observing the plaintiff as he testified. They had not only his testimony, but his looks, his appearance and his conduct while testifying to aid them in judging of his capacity and intelligence.

After an examination and consideration of all the evidence the court is not of the opinion that the decision of the jury in this case is unmistakably against the weight of the evidence and accordingly the entry will be,

*Motion overruled.*